IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| ANTWON A. BETHUNE,<br><br>  Plaintiff,<br>v.<br><br>DAVID OWENS, as WARDEN AT CAMDEN COUNTY CORRECTIONAL FACILITY,<br><br>  Defendant. | Civil Action<br>No. 17-cv-0977 (NLH)<br><br>**OPINION** |
|---|---|

APPEARANCES:

Antwon A. Bethune, Plaintiff Pro Se
#235430C, Northern State Prison
65 Frontage Road
Newark, NJ 07114

Stephanie C. Madden, Esquire
Office of Camden County Counsel
520 Market Street, 14th Floor
Camden, NJ 08102
Attorney for Defendant David Owens

**HILLMAN, District Judge:**

I.  **INTRODUCTION**

This matter comes before the Court on the motion for summary judgment ("the Motion") of defendant Warden David Owens ("Defendant" or "Owens"). (D.E. 23.)  Plaintiff Antwon A. Bethune ("Plaintiff") filed an affidavit in response to the Motion (D.E. 24), to which Defendant filed a reply. (D.E. 25.)  The Motion is being considered on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion for summary judgment will be granted.

1

## II. BACKGROUND

### A. PLAINTIFF'S ALLEGATIONS

Plaintiff was a pretrial detainee at the Camden County Correctional Facility ("CCCF") from September 11, 2015 through April 28, 2017. (D.E. 1 at 5; D.E. 23-1 at 10; D.E. 23-2 at ¶3.)[1] He is proceeding pro se with a 42 U.S.C. § 1983 civil rights complaint ("the Complaint") against Defendant as CCCF's warden regarding the conditions of confinement during Plaintiff's incarceration. (D.E. 1.)

Plaintiff contends that Defendant was "deliberately indifferent to my rights by continuing to house me in overcrowded housing units where I [was] forced to sleep on the floor." (D.E. 1 at 4.) Plaintiff alleges that he "put grievances in [to CCCF personnel], [but] receiv[ed] no responses back[,] with the highly overcrowded conditions going on for years." (*Id.* at 5.) He contends that the allegedly overcrowded conditions "subjected me to unsanitary conditions which breed multiple different kinds of staff [sic] infections [and] incite violence in a[n] already unsafe environment." (*Id.* at 5-6.)

Plaintiff states that the alleged confinement conditions caused him to suffer "back pain, sore muscles, muscle spasms [and] effects [on] my sleep." (*Id.* at 6.)

---

[1] Plaintiff is presently incarcerated in Northern State Prison. (ECF No. 23-2 at ¶3.)

2

Plaintiff seeks $1,000,000 in compensatory damages, $500,000 in punitive damages, and $500,000 for "mental and physical damage." (*Id*. at 6-7.) He also asks that he and "all future inmates housed at CCCF never have to sleep on the floor." (*Id*. at 6.)

**B.     PROCEDURAL HISTORY**

On March 6, 2017, this Court granted Plaintiff's IFP Application and directed the Clerk of the Court to file the Complaint. (D.E. 2.) After screening Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A, the Court ordered that the Complaint's Fourteenth Amendment conditions of confinement claim against Defendant be allowed to proceed. (D.E. 3.)

Defendant filed an Answer to Plaintiff's Complaint on May 21, 2018. (D.E. 18.) On August 13, 2018, Magistrate Judge Ann Marie Donio issued a scheduling order requiring that all pretrial factual discovery be concluded by November 30, 2018. (D.E. 19.) Defendant served Plaintiff with his: (1) November 1, 2018 Fed. R. Civ. P. 26 Disclosures (D.E. 23-6 at 2-50); (2) November 1, 2018 document requests (D.E. 23-7 at 2-5); and (3) November 1, 2018 interrogatories. (D.E. 23-7 at 6-13.) Defendant's Motion states that Plaintiff had not, as of January 24, 2019, served Defendant with any discovery responses or disclosures. (D.E. 23-1 at 6.) Plaintiff's February 27, 2019 response to the Motion appended his responses to Defendant's interrogatories and document requests.

3

(D.E. 24 at ¶3; D.E. 24 at 5-8.) Such measures are untimely under the Court's August 13, 2018 scheduling order that established a November 30, 2018 pretrial factual discovery deadline. (D.E. 19.) Plaintiff's February 27, 2019 response also appended document requests directed to Defendant. (D.E. 24 at 9-10.) Those discovery requests are also untimely under the scheduling order. (D.E. 19.)

On January 24, 2019, Defendant filed the motion for summary judgment now pending before the Court. (D.E. 23.) On February 27, 2019, Plaintiff filed an affidavit in opposition to the Motion. (D.E. 24.) On March 11, 2019, Defendant filed a reply. (D.E. 25.)

### III. **DISCUSSION**

Defendant moves for summary judgment on three grounds: (1) Plaintiff's failure to adduce evidence from which a reasonable fact finder could find unconstitutional conditions of confinement at CCCF (D.E. 23-1 at 8-12; D.E. 25 at 2-3); (2) the Complaint's mootness, in light of the Sixth and Amended Final Consent Decree in the class action *Dittimus-Bey, et al. v. Camden Cty. Corr. Facility, et al.*, Docket No. 05-cv-0063 (D.N.J.) ("*Dittimus-Bey*") (D.E. 23-1 at 13-14; D.E. 25 at 3-4); and (3) Defendant's entitlement to qualified immunity, based on Plaintiff's failure to show that Defendant was aware of purported risk of serious harm or that he individually participated or acquiesced in the alleged wrongs. (D.E. 23-1 at 13-14; D.E. 25 at 4.)

4

This Court finds that: for reasons discussed in Part IV, the mootness doctrine does not apply to Plaintiff's claims for monetary relief; but for reasons discussed in Part V, Defendant is entitled to summary judgment by virtue of the lack of a genuine dispute of material fact. Given that summary judgment is proper, there being no proof of a constitutional violation, the Court need not address the qualified immunity defense.

## IV. **WHETHER THE FINAL CONSENT DECREE IN *DITTIMUS-BEY* RENDERS PLAINTIFF'S COMPLAINT MOOT**

In addition to Defendant's meritorious argument that Plaintiff has not adduced any evidence of Fourteenth Amendment violations from CCCF conditions of confinement (*see* Section V(B) of this Opinion below), Defendant also seeks summary judgment on the ground that the Sixth and Final Amended Consent Decree in *Dittimus-Bey* has rendered Plaintiff's Complaint moot. (D.E. 23-1 at 13-14.)

The doctrine of "mootness" derives from the limitation upon federal judicial power in Article III of the Constitution limiting jurisdiction to actual cases and controversies. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). Thus, federal courts are limited to resolving "the legal rights of litigants in actual controversies," *Id., quoting Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (quoting *Liverpool, New York & Philadelphia*

5

*S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)). Thus, "[a]n action is rendered moot when an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during the litigation." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations omitted). The test for Article III mootness is whether it has become "impossible for a court to grant any effectual relief whatever to the prevailing party." *In re ICL Holding Co., Inc.*, 802 F.3d 547, 553 (3d Cir. 2015) (citing *Chafin v. Chafin*, 568 U.S. 165 (2013)). Therefore, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016).

It is true that Plaintiff does not contest the *Dittimus-Bey* litigation and its effects on CCCF conditions, as characterized in Defendant's Brief In Support of Motion for Summary Judgment. (D.E. 23-1 at 13-14.) For example, Camden County and CCCF officials agreed to consent decrees in *Dittimus-Bey* to take measures to improve the conditions at the CCCF, such as by retaining criminal justice consultants to investigate and recommend solutions to the CCCF's overcrowding and staffing problems. (*Id*.) Those facts (*id*.) show significant and systemic improvements as to both overcrowding and related conditions at CCCF. Plaintiff is not presently confined at CCCF, and the successful *Dittimus-Bey* class action litigation has placed the challenged conditions at CCCF under

review, resulting in appreciable changes for those confined at CCCF.  That these facts from *Dittimus-Bey* are uncontested here by Plaintiff Bethune is merely further demonstration that summary judgment is appropriate.

The Court is not persuaded, however, that the final consent decree in *Dittimus-Bey* in and of itself moots Plaintiff's case. Plaintiff, a class member in *Dittimus-Bey*, is bound by the final judgment in which class members are deemed to release claims for injunctive and declaratory relief against Camden County and its officers and employees.  This means that Mr. Bethune, like all class members, could no longer obtain injunctive relief beyond that authorized in the Consent Decree for jail conditions during the class period. But that litigation did not involve individual inmates' or detainees' claims or class claims for money damages, which must be sought and proved on an individual claim basis.  In other words, the Final Consent Decree in *Dittimus-Bey* did not adjudicate or deal with any individual money damage claims.  That Consent Decree does not extinguish the possibility that constitutional violations occurred to individuals during the class period. Indeed, claims for money damages were not sought in *Dittimus-Bey* and inmates were free to pursue individual claims for monetary relief under 42 U.S.C. § 1983 by filing an individual complaint, as Mr. Bethune has done.  Accordingly, to the extent that Defendant argues that Plaintiff's claim for money damages is

7

mooted by the final Consent Decree in *Dittimus-Bey*, the mootness argument lacks merit and is denied.

**V.    MOTION FOR SUMMARY JUDGMENT**

  **A.    STANDARD OF REVIEW**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Where, as in this case, the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment by observing that there is an absence of evidence to support an essential element of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Rahman v. Taylor*, 2013 WL 1192352, at *2-3 (D.N.J. Mar. 21, 2013). Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. A plaintiff opposing a defendant's motion for summary judgment has the burden of coming forward with evidence, not mere allegations, that would raise a genuine dispute of material fact and suffice to enable a reasonable jury, giving all favorable inferences to the plaintiff as the party opposing summary judgment,

to find in plaintiff's favor at trial. Rule 56(c)(1)(A) further provides that, to create a genuine issue of material fact, the nonmovant must do so by:

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

Fed. R. Civ. P. 56(c)(1)(A).

After careful review of the record and the parties' submissions on the Motion, this Court finds that entry of summary judgment is appropriate.

### B. PLAINTIFF HAS FAILED TO COME FORWARD WITH ANY EVIDENCE SUPPORTING HIS CLAIM OF UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT

#### 1. The Record In This Case As To Conditions At CCCF

The evidentiary record here consists of what Defendant attached to the Motion. Plaintiff has provided the Court with only: pleadings that contain a mix of facts and legal conclusions (D.E. 1; D.E. 24 at 1-4); and his untimely written discovery responses and requests. (D.E. 24 at 5-10.) The Complaint attaches no affidavits, certifications, or exhibits, other than his inmate account statement for purposes of his IFP application. (D.E. 1-2 at 4-5.) Mere pleadings are insufficient to defeat summary judgment. *Rahman*, 2013 WL 1192352, at *3. The ample time for completing factual discovery has expired. (D.E. 20.)

Defendant's document production suggests that Plaintiff was initially detained in CCCF on September 11, 2015. (D.E. 23-6 at 6.) Plaintiff's Complaint alleges the same. (D.E. 1 at 5.) This fact makes Plaintiff a member of the certified class in the matter of *Dittimus-Bey*. (D.E. 23-9 at ¶9.) In *Dittimus*-Bey, the plaintiffs had alleged several conditions of "unhealthy, unsafe, and unsanitary environment . . . [a]s a direct result of severe overcrowding and understaffing" at CCCF. (*Dittimus-Bey v. Taylor*, No. 05-0063 (D.N.J. June 30, 2017) (D.E. 60 at 4 and 7).) As noted in the *Dittimus-Bey* Sixth and Amended Final Consent Decree, CCCF's population "reached a crisis point in early 2013" (D.E. 23-9 (Consent Decree) at ¶35), after which the daily population at CCCF was closely monitored and managed over time to appropriate levels for resolution of the *Dittimus-Bey* claims. (*Id*. at ¶¶36–37.)

In this case, Defendant does not appear to contest Plaintiff's claim (D.E. 1 at 4-6) that he was housed at CCCF in an overcrowded cell. Neither party has provided the Court with specific evidence of Mr. Bethune's particular cell assignments during his period of detention. Thus, the Court will assume, for purposes of this Motion only, that Plaintiff was housed in overcrowded conditions at some point during the period of his September 11, 2015 through April 28, 2017 detention. Population data suggests that, at "crisis points" during Plaintiff's detention, the average two-person CCCF cell in fact contained three persons, one of whom had to temporarily sleep on the floor mattress, while two occupied

bunk beds. Nevertheless, the *Dittimus-Bey* Sixth and Final Amended Consent Decree reflects the fact that the overcrowding issues were being addressed during the time of Plaintiff's incarceration at the CCCF. (D.E. 23-9 at ¶¶33-37 and 44-60.)

Defendant asserts though that, based on the underlying facts and on Plaintiff's failure to provide evidence supporting his contentions, Plaintiff fails to state a claim or raise a dispute of material fact as to any Fourteenth Amendment violation. (D.E. 23-1 (Def. Br.) at 8-12.) Defendant's Motion relies on the Fourteenth Amendment to argue that Plaintiff has not stated an unconstitutional conditions of confinement claim. (D.E. 23-1 at 8-12.) Defendant's reply brief, though, contends that the Eighth, not Fourteenth, Amendment governs this case. (D.E. 25 at 2-3.) The latter contention is incorrect. A pretrial detainee is protected from conditions constituting punishment under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's Cruel and Unusual Punishment Clause. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1971). While the Eighth Amendment proscribes cruel and unusual punishment for convicted inmates, the Due Process Clause of the Fourteenth Amendment proscribes any punishment of pre-trial detainees. Here, Plaintiff seeks relief for the time he was incarcerated at CCCF "in relation to pre-hearing detention." (D.E. 24 at 4.) Thus, the Fourteenth Amendment governs his claims as a pre-trial detainee. *See also* D.E. 23-2 at 1 (referring to Plaintiff's status as "a pre-trial detainee").

### 2. Governing Law As To Conditions Of Confinement Claim

The mere fact that an individual is lodged temporarily in a cell with more persons than its intended design does not, on its own, rise to the level of a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348-50 (1981) (holding double-celling by itself did not violate Eighth Amendment); *Carson v. Mulvihill*, 488 F. App'x 554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not constitute punishment, because there is no 'one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment'") (quoting *Bell*, 441 U.S. at 542)). More is needed to demonstrate that such crowded conditions, for a pretrial detainee, "shock the conscience," and thus violate due process rights. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (noting that due process analysis requires courts to consider whether the totality of the conditions "cause[s] inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them").

### 3. Plaintiff Fails To State A Claim Or Raise A Disputed Material Fact As To Conditions Of Confinement

Plaintiff has adduced no evidence that the conditions he experienced while incarcerated in a purportedly overcrowded cell were so severe that they "shock the conscience." *See Hubbard*, 538 F.3d at 233. Similarly, being a detainee in an overcrowded unit does not, standing alone, rise to the level of a due process violation.

*No Showing Of An Unconstitutional Deprivation Of A Basic Human Need*: Plaintiff's vague and cursory allegations regarding "sore muscles," "back pain," "muscle spasms," and "highly overcrowded conditions" (D.E. 1 at 5 and 6) essentially complain of an inconvenient and uncomfortable situation. His response affidavit's contentions about four detainees being "crushed together into a cell designed for [one]" (D.E. 24 at ¶ 6), its reference to "a great deal of physical pain and mental anguish" (*id*. at 12), and its allegations of "genuine privations and hardships" from overcrowding (*ibid*.) fail to state a claim of constitutional magnitude. "[T]he Constitution does not mandate comfortable prisons." *Carson*, 488 F. App'x at 560 (quoting *Rhodes*, 452 U.S. at 349). "To the extent that such conditions are harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.

Without more, the Court cannot say that a reasonable fact finder could conclude that the conditions Plaintiff references deprived him of any basic human needs. Even affording Plaintiff the benefit of the doubt as to his unsubstantiated allegations about the measurements of CCCF cells and the size of their contents (D.E. 24 at ¶12), he adduces no evidence that, for example: he was sickened by the conditions he describes; the crowding in fact led to any assault of him by another inmate; or he was significantly sleep-deprived due to these conditions. *See*, *e.g.*, *Williams v. Meisel*, 2014 WL 4744561, at *4 (E.D. Pa. Sept. 24, 2014) (finding

13

that mold in showers did not amount to a constitutional violation because the mold did not expose inmates to an unreasonable risk of serious damage to future health). "[S]leep[ing] on the floor for great amounts of time" (D.E. 1 at 6) and "virtually impossible ... unencumbered movement" (D.E. 24 at 7) fall short of conscience-shocking conduct.

Plaintiff has not produced evidence that the restricted movement conditions he describes (D.E. 24 at ¶¶11, 15) "were created for an improper purpose or were excessive in relation to that purpose." *See Carson*, 2009 WL 3233482, at *3. Limited movement in detention facilities is required to ensure institutional security and internal order; Plaintiff offers no evidence showing that such was not the case here. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987) (prison regulations are permissible if they are reasonably related to legitimate penological objectives); *Fraise v. Terhune*, 283 F.3d 506, 516 (3d Cir. 2002) (referring to the "legitimate penological interest in maintaining order and security within the prison system").

*No Showing Of Physical Injury To Sustain Plaintiff's Mental And Emotional Damages Claim*: Federal law limits compensatory damage claims[2] for conditions of confinement mental and emotional injuries to only those cases where a physical injury has occurred.

---

[2] Since Plaintiff is no longer confined at CCCF, injunctive relief is unavailable to him. *See Abdul-Akbar v. Watson,* 4 F.3d 195, 197 (3d Cir. 1993) (a prisoner lacks standing to seek injunctive and declaratory relief if he is no longer subject to the alleged conditions).

*Nickles v. Taylor*, No. 2010 WL 1949447, at *1 (D.N.J. May 14, 2010) (citing 42 U.S.C. § 1997e(e)). Section 803 (d)(e) of the Prison Litigation Reform Act states, in relevant part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury ..." 42 U.S.C. § 1997e(e). "The plain language of § 1997e(e) makes no distinction between the various claims encompassed within the phrase 'federal civil action' to which the section applies." *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000). *See also Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir. 2002) ("Section 1997e(e) applies to all federal civil actions including claims alleging constitutional violations"); *Doe v. Delie*, 257 F.3d 309, 314 n.3 (3d Cir. 2001) ("we have since recognized that § 1997e(e) prohibits compensatory damages for mental or emotional injury absent allegations of physical injury").

Here though, Plaintiff's CCCF incarceration file does not contain any records indicating any grievances or damages, medical or otherwise, from alleged overcrowding. (*See* D.E. 23-8 at ¶4; D.E. 23-6 at 6-50.) He offers no evidence to substantiate his contention that he "put grievances in, receiving no response back" as to his supposed injuries. (D.E. 1 at 5.) Even if the Court were to consider Plaintiff's untimely discovery responses (D.E. 24 at 5-8), he has not produced any evidence demonstrating that the

15

purported "non-reversible ... toll on my mental health" (D.E. 1 at 6) in fact occurred and was caused by the challenged conditions of confinement.[3]

*No Demonstration Of Deliberate Indifference*: Defendant further asserts that the *Dittimus-Bey* class-action litigation remediated overcrowding and conditions of confinement at CCCF. (D.E. 23-1 at 13-14.) Indeed, as a result of the *Dittimus-Bey* litigation[4], there has been a significant lessening of the crowding in CCCF and improvements in other prison conditions. (D.E. 23-8 (Consent Decree) at ¶¶36-37.) When the *Dittimus-Bey* litigation commenced in 2005, CCCF's average daily population was 1,848 inmates; by May of 2010, the average monthly population reached an all-time low of 1,232 inmates. (D.E. 23-9 at ¶¶33-34.) Roughly four months prior to Plaintiff's release from CCCF in April 2017, CCCF's population as of December 9, 2016 was at 1,160 -- in a facility designed for 1,267 persons. (D.E. 23-9 (Consent Decree)

---

[3] Plaintiff's failure to demonstrate mental or emotional injuries from CCCF overcrowding is what forecloses his recovery for compensatory damages. However, Defendant's contention that "Plaintiff must prove damages to prove any constitutional violation" (D.E. 25 at 3) is not correct. *See*, *e.g.*, *Allah*, 226 F.3d at 252 (nominal and punitive damages for First Amendment violation not barred because prisoners need not allege a physical injury to recover; the deprivation of the constitutional right is itself a cognizable injury, regardless of any resulting mental or emotional injury).

[4] Order Approving Amended Final Consent Decree, *Dittimus-Bey v. Taylor*, No. 05-0063 (D.N.J. June 30, 2017); *see also Dittimus-Bey v. Taylor*, 2013 WL 6022128 (D.N.J. Nov. 12, 2013); *Dittimus-Bey v. Taylor*, 244 F.R.D. 284 (2007). The Court does not imply that Plaintiff's claims for monetary relief in this case (ECF No. 1 at 6-7) are barred by the class action settlement of *Dittimus-Bey*, since that case only involved claims for injunctive relief.

at ¶¶33-34, 36.) While it is conceivable that an individual inmate could be subjected to unconstitutional conditions even at a jail that is continuously monitored and operating within reasonable capacity limits, Plaintiff has not adduced any evidence that he has actually suffered such deprivation.

These undisputed facts refute any claim that Defendant or other supervisors at CCCF were "deliberately indifferent" to the alleged constitutional violations, which is the mental culpability that must be proven to find liability under § 1983. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (describing the "deliberate indifference" standard). There is no evidence of conduct that would tend to show deliberate indifference on the part of Defendant.

For all of these reasons, Defendant is entitled to summary judgment on Plaintiff's overcrowded conditions of confinement Fourteenth Amendment claim.

C.  **WHETHER CLAIMS AGAINST DEFENDANT MUST BE DISMISSED BECAUSE HE IS ENTITLED TO QUALIFIED IMMUNITY**

In addition to the grounds discussed in Sections IV and V(B) of this Opinion, Defendant also requests that this Court grant summary judgment on the basis of qualified immunity. (D.E. 23-1 at 12-13; D.E. 25 at 4 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007), and *Rode v. Dellaciprete*, 845 F.2d 1195 (3d Cir. 1988).)

Qualified immunity protects government officials from liability as long as their conduct "'does not violate clearly

17

established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). The qualified immunity test is two-pronged: whether the pleadings allege that constitutional violation occurred, and whether "reasonable officials could fairly have known that their alleged conduct was illegal." *Saucier v. Katz*, 533 U.S. 194, 121 (2001); *Larsen v. Senate of the Commonwealth of Pa.*, 154 F.3d 82, 86 (3d Cir. 1998).

Given that Plaintiff fails to demonstrate a basis for a constitutional violation, there is no need to address whether a reasonable official would know his conduct was unlawful, due to no proof of such illegality.

## VI. **CONCLUSION**

For the reasons stated above, the Defendant's motion for summary judgment is granted. An accompanying Order will be entered.

| **August 12, 2019** | **s/ Noel L. Hillman** |
|---|---|
| Date | NOEL L. HILLMAN |
| | U.S. District Judge |

At Camden, New Jersey